**RUOFF v. BROWNELL, Atty. Gen.**
**Civ. A. No. 4649–48.**

United States District Court
District of Columbia.
June 30, 1953.

John W. Pehle and Lawrence S. Lesser, Pehle, Lesser, Mann, Riemer & Luxford, Washington, D. C., John A. Danaher, Washington, D. C., for plaintiff.

Dallas S. Townsend, Asst. Atty. Gen., Harold Ungar, James D. Hill, George B. Searls, Department of Justice, Washington, D. C., for defendant.

LAWS, Chief Judge.

In a suit by plaintiff under Section 9(a) of the Trading with the Enemy Act, 40 Stat. 419 (1917), as amended, 50 U.S.C.A. Appendix, § 9(a), to recover property vested by the Attorney General of the United States in September, 1948, as enemy owned property, defendant has served a request for admissions of 46 facts and of the genuineness of 172 documents, pursuant to Rule 36 of the Federal Rules of Civil Procedure, 28 U.S.C.A. Plaintiff having made written objection to answering all but six requests for admissions on the ground they are irrelevant, the cause came on for hearing on the question whether plaintiff shall be required to answer defendant's requests.

The parties are agreed that the residence and domicile of plaintiff during and after the war with Germany are an issue in this suit. Defendant also denies plaintiff's right to recover on the ground "that plaintiff by reason of ties and connections with Nazis, her sympathy with the German cause during the war, her active aid to the enemy, including investments in German property and participation in the German war effort, has tainted her as an enemy alien."

Plaintiff maintains that enemy taint is not a proper issue in this case, that the requests for admissions are directed solely to that inquiry, and that they are therefore irrelevant.

██ On the question of residence, plaintiff maintains she was and is a resident of the United States, especially since her return to this country in August, 1946; defendant, on the other hand, avers that she returned simply to obtain the property vested by the United States, and that plaintiff then and since has maintained her dom-·icile in Germany. The definition of residence and domicile varies with the statute ·involved, be it trading with the enemy, immigration and naturalization, selective ·service, divorce, tax, or voting legislation. McGrath v. Kristensen, 1950, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173. Section 2(a) of the Trading with the Enemy Act, 40 Stat. 411 (1917), 50 U.S.C.A.Appendix, § 2(a), defines enemy in terms of residence, but does not define residence. "Legislative history leaves the meaning shrouded" as something more than mere physical presence and something less than domicile. Guessefeldt v. McGrath, 1952, 342 U.S. 308, 311–312, 72 S.Ct. 338, 340–341, 96 L.Ed. 342, 346–347. Residence and domicile have no fixed legal definitions, but are to be determined in the light of the many relevant and frequently conflicting indicia available, the party's intentions, acts, declarations and other circumstances. See District of Columbia v. Murphy, 1941, 314 ·U.S. 441, 62 S.Ct. 303, 86 L.Ed. 329; Kristensen v. McGrath, 1949, 86 App.D.C. 48, 179 F.2d 796, affirmed, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173. The relevance, significance and the weight to be assigned to various factors and circumstances follow no prescribed formula, but are to be determined by the policy to be served, the claims asserted and the nature of the proof required.

Defendant's requests for admission consist, according to their description by plaintiff, of requests relating to alleged "ties and connections with Nazis" concerning documents and assertions of alleged fact pertaining to memberships, statements, acts and views of her husband and sons; requests relating to alleged "active aid to the enemy" by investment and ownership of property in Germany; requests relating to alleged "sympathy with the German cause", such as charitable gifts; her· application and use of a German passport; transactions with the German foreign exchange office; purported documents or facts ante-dating the outbreak of war between the United States and Germany; and several other matters.

██ Without reference to the question of alleged "enemy taint", the Court is of opinion that defendant's requests for admissions are all ·relevant to the question of residence. The activities, statements and associations of a woman's husband and children throw some light on where the family hearth is centered. Broad latitude must be allowed to show social activities, membership in clubs, lodges and societies, and financial and real estate transactions, as well as declarations that may have been made, as indicative of intent. As Mr. Justice Jackson said in District of Columbia v. Murphy, 314 U.S. 441, 457–458, 62 S.Ct. 303, 310–311, 86 L.Ed. 329, 338–339:

"All facts which go to show the relations retained to one's former place of abode are relevant in determining domicile. What bridges have been kept and what have been burned? Does he retain a place of abode there, or is there a family home with which he· retains identity? Does he have investments in local property or enterprise which attach him to the community? What are his affiliations with the professional, religious, and fraternal life of the community, and what other associations does he cling to? How permanent was his domicile in the ·community from which he came? Had it long been a family seat, or was he there a bird of passage? Would a return to the old community pick up threads of close association? Or has he so severed his relations that his old community is as strange as

another? Did he pay taxes in the old community because of his retention of domicile which he could have avoided by giving it up? Were they nominal or substantial?"

Plaintiff's objections to the requests for admissions being based solely on the question of relevancy, the Court directs its attention to that ground alone. Whether plaintiff can be required to admit or deny statements or activities attributed to her husband or children the Court does not now decide since counsel have stated to the Court no such point is raised. Nor does the Court now determine the ultimate question of plaintiff's residence on whatever may be the critical date for determining "enemy" status, a question which should properly be left for the trial court's decision after a complete record has been made.

Plaintiff will be directed to answer defendant's requests for admissions. Counsel will prepare an appropriate order in conformity with this memorandum.